UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------- X
BHUTAN INTERNATIONAL FESTIVAL,            :
LIMITED, and BHUTAN DRAGON EVENTS         :
AND FESTIVALS, LIMITED,                   :
                                          :
                          Plaintiffs,     :
                                          :
                  -against-               :
                                          :
                                          :
EDEN PROJECT, EDEN PROJECT LIMITED,       :
EDEN LAB, and EDENLAB LTD.,               :
                                          :
                          Defendants.     :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/3/2018

17-CV-8980 (VEC)

MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiffs Bhutan International Festival, Limited and Bhutan Dragon Events and Festivals, Limited (collectively, "Plaintiffs") have sued Eden Project, a/k/a Eden Project Limited, and Eden Lab, a/k/a EdenLab Ltd., for breach of fiduciary duty, breach of contract, an accounting, and tortious interference.[1] *See* Am. Compl., Dkt. 21. Defendant Eden Project (hereafter generally referred to as "Project") has moved to dismiss for failure to state a claim and lack of personal jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). *See* Notice of Mot., Dkt. 26. For the following reasons, Project's motion to dismiss is GRANTED, and all claims against Project are DISMISSED WITH PREJUDICE for failure to state a claim. Additionally, all claims against Defendants Eden Lab (hereafter generally referred to as "Lab") are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

---

[1] Although the caption suggests that Eden Project is a separate entity from Eden Project Limited, and that Eden Lab is a separate entity from Eden Lab Ltd., the Amended Complaint makes clear that Eden Project and Eden Lab are simply alternate names for Eden Project Limited and Eden Lab Ltd., respectively. *See* Am. Compl. ¶¶ 5–6.

1

## BACKGROUND[2]

Plaintiffs were the organizers of a large-scale cultural festival held in Thimphu, Bhutan, in 2015 (the "Festival"). *See* Am. Compl. ¶ 1. The Festival, known as the Bhutan International Festival, was intended to draw tourists to Bhutan and included numerous musical artists, exhibitions, and other performers. *See id.* Lab is a "creative production studio and design and sustainability consultancy" organized under the laws of the United Kingdom. *See id.* ¶¶ 6, 44. Project is a separate entity, also organized under the laws of the United Kingdom, that owns an "ecological theme park" in southern England. *See id.* ¶¶ 5, 48.[3]

In late 2014, Plaintiffs entered into an Agreement with Lab, pursuant to which Plaintiffs agreed to pay Lab to publicize and recruit artists to participate in the Festival. *See id.* ¶ 1.[4] The Agreement set a £175,000 budget for the Festival, most of which would be raised through donations. *See id.* ¶¶ 15, 18, 21. Specifically, the Agreement required that at least £100,000 be secured through outside fundraising before artists and other vendors could be booked for the Festival. *See id.*

Plaintiffs and Lab were unable to raise the funds they needed, but Lab nevertheless booked numerous artists and vendors for the festival. *See id.* ¶¶ 21–25. As a result, the Festival

---

[2] On this motion to dismiss, the Court accepts all factual allegations in the pleadings as true and draws all reasonable inferences in the light most favorable to Plaintiffs. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

[3] Confusingly, the Amended Complaint refers to Eden Lab and its employees simply as "Eden." *E.g.*, Am. Compl. ¶ 14 (alleging that Plaintiffs wired funds "to Eden"). Other allegations in the Amended Complaint, Plaintiffs' response to Project's motion to dismiss, and other filings in this case, however, make clear that these references are to Eden Lab, not Eden Project. *See, e.g.*, Defs.' Ltr. (May 15, 2018), Dkt. 33 (stating that Plaintiffs made payments to Eden Lab, not Eden Project).

[4] The purported "Agreement" is memorialized in a one-page term sheet, which is labeled "initial terms of agreement" and which stated that a more formal contract would be executed shortly. *See* Am. Compl. ¶ 12; Fitzgerald Decl., Dkt. 29, Ex. 3. The Amended Complaint is silent on whether a formal contract was ever executed.

ended up significantly over-budget, leaving Plaintiffs with considerable financial liabilities. *See id.* ¶¶ 2, 18, 25–26.

Plaintiffs allege that Lab breached the provisions in the Agreement that required funding to be in place before Lab was permitted to book artists and vendors for the Festival. *See id.* ¶¶ 1–2. Plaintiffs sue for breach of fiduciary duty, breach of contract, an accounting, and tortious interference. *See id.* ¶¶ 53–68.

Plaintiffs filed this action in November 2017. *See* Compl., Dkt. 1. Project moved to dismiss the Complaint for lack of personal jurisdiction, *see* Notice of Mot., Dkt. 16, and, in response, Plaintiffs filed an Amended Complaint. *See* Am. Compl. Project has moved to dismiss the Amended Complaint. *See* Notice of Mot., Dkt. 26. Lab has not appeared in this action, despite having been served. *See* Certificate of Service, Dkt. 13; Aff. of Service, Dkt. 36.

## DISCUSSION

### I. Plaintiffs' Claims Against Project Are Dismissed for Failure to State a Claim

Project moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6), on the ground that it was not a party to the Agreement between Plaintiffs and Lab. *See* Defs.' Mem. of Law, Dkt. 28, at 1–2. Project argues that it played no role in the organization of the Festival, that it and Plaintiffs "are strangers to each other," and, thus, that Plaintiffs have failed to state a claim against Project. *Id.* at 1.

Plaintiffs concede that Project was not a party to the Agreement but argue that Eden Lab was an "agent" or an "alter ego" of Project and, thus, that Project should be held liable for the acts and omissions of Lab. *See* Am. Compl. ¶ 51; Pls.' Mem. of Law, Dkt. 30, at 2.

#### A. The Applicable Law

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d

3

271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [the Court is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

A corporation may be held liable for the wrongs of another corporation either as an "alter ego" of that corporation, pursuant to a "veil-piercing analysis" or, alternatively, as a principal, pursuant to "traditional principles of agency." *Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2007).

An "alter ego" analysis requires a court to disregard corporate formalities and treat two nominally separate corporations as the same entity. "Disregard of the corporate form is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10-CV-4754, 2011 WL 4056306, at *5 (S.D.N.Y. Sept. 13, 2011) (internal quotation marks omitted); *see also Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). New York law requires a party seeking to pierce the corporate veil to make a two-part showing: first, that one corporation exercised "complete domination" over the other with respect to the transaction at issue; and second, that such domination was used "to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (citing *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993)).

As for the first prong, courts look to several factors to determine whether a corporation exercises complete domination over the other, including whether "corporate formalities" have been observed, whether the corporation is inadequately capitalized, and the degree of "overlap in ownership, officers, directors, and personnel" between the two entities. *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)). As for the second prong, the plaintiff must allege that the corporation in question "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party, such that a court in equity will intervene." *Morris*, 82 N.Y.2d at 142; *see also FirstEnergy*, 766 F.3d at 229.

Alternatively, one corporation may be held liable for the acts of another under "traditional principles of agency." *Mouawad Nat'l Co.*, 476 F. Supp. 2d at 422. An agency relationship between two entities requires the principal to have the power to control the agent and requires the principal to consent to the agent acting on the principal's behalf. *See id.* (collecting cases). A party may establish the principal's consent and control by showing that the principal vested the agent with "actual authority" or "apparent authority." *Id.* Plaintiffs here allege only that Eden Lab acted with apparent authority. *See* Pls.' Mem. of Law at 2–4.

"Apparent authority exists when a principal, either intentionally or by lack of ordinary care, induces [a third party] to believe that an individual has been authorized to act on its behalf." *Aleph Towers, LLC v. Ambit Texas, LLC*, No. 12-CV-3488, 2013 WL 4517278, at *6 n.10 (E.D.N.Y. Aug. 23, 2013) (quoting *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997)). "Apparent authority will only be found where words or conduct of the principal— not the agent—are communicated to a third party, which give rise to a reasonable belief and appearance that the agent possesses authority to enter into the specific transaction at issue."

5

*USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 268 (E.D.N.Y. 2014) (quoting *Edinburg Volunteer Fire Co. v. Danko Emergency Equip. Co.*, 55 A.D.3d 1108, 1110 (3d Dep't 2008)). In order to allege apparent authority, then, a complaint must allege both (1) that the principal made representations that led the plaintiff to believe that the agent was acting with the principal's authority and (2) that the plaintiff's belief was reasonable. *See id.*; *see also Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir. 1990).

B.  **Application to This Case**

The Amended Complaint does not allege facts that provide any basis for the Court to infer that Project can be held accountable for Lab's conduct. As an initial matter, Plaintiffs' response to Project's motion does not argue that Project can be held liable pursuant to a veil-piercing or alter-ego theory; the response relies solely on the argument that Project is liable on an agency theory. *See* Pls.' Mem. of Law at 2–4. To the extent that Plaintiffs intended to raise an alter-ego theory in the Amended Complaint, that theory has been abandoned. *See Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016); *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014).[5]

Plaintiffs have failed to state a claim under an agency theory. Plaintiffs assert that Lab held itself out as a "partner" of Project, but Plaintiffs allege no facts from which it could be

---

[5]   Even if the argument were not abandoned, the Amended Complaint alleges no facts that would support an argument that the corporate veil should be pierced. While Plaintiffs allege that Lab held itself out as a "partner" of Project, *see* Am. Compl. ¶¶ 48–52, Plaintiffs do not allege that Project exercised complete domination over the corporate form of Lab. There is no indication, for example, that the two entities shared personnel, shuttled funds between each other, or otherwise disregarded corporate formalities. Furthermore, the Amended Complaint does not allege that Project used Lab to commit fraud or misconduct; instead, both entities are alleged to have been engaged in legitimate business. *See* Am. Compl. ¶¶ 33, 48; *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339–40 (1998) ("An inference of abuse [of the corporate form] does not arise . . . where a corporation was formed for legal purposes or is engaged in legitimate business.").

inferred that Project consented to those representations.[6] It is black-letter law that an agent's authority must be traceable to some conduct or representation of the principal. *See USHA Holdings*, 11 F. Supp. 3d at 268; *Hallock v. State*, 64 N.Y.2d 224, 231 (1984) ("The agent cannot by his own acts imbue himself with apparent authority."); *Ford v. Unity Hosp.*, 32 N.Y.2d 464, 473 (1973) ("The apparent authority for which the principal may be held liable must be traceable to him; it cannot be established by the unauthorized acts, representations or conduct of the agent." (citation omitted)); *Restatement (Third) Of Agency* § 2.03 (2006) (requiring that the appearance of authority be "traceable to the principal's manifestations"). Because Plaintiffs have alleged no facts from which Lab's representations can be attributed to Project, Plaintiffs have not adequately alleged the existence of an agency relationship between the two entities.

In addition, Plaintiffs have not alleged facts from which the Court could infer that their reliance on Lab's representations was reasonable. Plaintiffs' Agreement with Lab expressly stated that any "brand association" with Project could not "be publicized or used to leverage funding" without the approval of Project's vice chairman, *see* Am. Compl. ¶ 16; Fitzgerald Decl. Ex. 3; there is no allegation, however, that Plaintiffs sought this approval or even questioned whether Lab might be acting without Project's authorization.

According to Plaintiffs, they based their assumption about Project's involvement on: the fact that both Lab and Project are based in the United Kingdom; that Lab "was headed by a long-

---

[6]  Specifically, Plaintiffs point to the LinkedIn page of one of Lab's employees, which states that he worked for Project for 14 years before founding Lab as a new "creative partner" of Project. *See* Am. Compl. ¶ 44; Fitzgerald Decl. Ex. 1. But the LinkedIn page also states that this employee stopped working for Project several months before he founded Lab, *see* Fitzgerald Decl. Ex. 1. Thus, the LinkedIn page provides no basis to infer that the employee made this representation with the consent (or even knowledge) of Project. Similarly, Plaintiffs rely on a series of emails that they exchanged with Lab employees, in which they discussed the supposed involvement of Project in the Festival; Plaintiffs also point to the email signature of an Lab employee, which identified Lab as an international "partner" of Project. *See id.* Exs. 2, 4–6, 9. None of these emails, however, was sent by a Project employee; none of them, therefore, establishes that Project consented to these representations. Plaintiffs also cite to articles in the news media describing Lab as Project's international "partner;" putting aside the hearsay aspects of those allegations, the statements in the articles are not attributed to Project or its employees. *See id.* Exs. 10–12.

standing executive from Eden Project"; that the names of both entities used the word "Eden"; and that Lab "was copiously throwing about the 'sustainability' eco-message of Eden Project." Pls.' Mem. of Law at 5. These facts fall far short of giving rise to any inference that Plaintiffs had a reasonable belief that Lab was acting as Project's agent. Moreover, Plaintiffs were aware that the executive in question had terminated his employment with Project several months prior, and Plaintiffs were aware that Lab was a separate entity from Project. *See* Am. Compl. ¶ 44; Fitzgerald Decl. Ex. 1 (executive's LinkedIn page, showing the dates that he stopped working for Project and began working for Lab); *id.* Ex. 8 (executive's email signature, stating that Lab is incorporated as a separate entity).

At best, the facts alleged suggest that Plaintiffs were on notice to investigate the relationship between Lab and Project further, whether by conducting a review of public records, contacting Project executives, or otherwise. *See F.D.I.C. v. Providence Coll.*, 115 F.3d 136, 141 (2d Cir. 1997) ("[A] third party 'who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority.'" (quoting *Itel Containers*, 909 F.2d at 703)); *Ford*, 32 N.Y.2d at 472; *Arol Dev. Corp. v. Whitman & Ransom*, 626 N.Y.S.2d 118, 120 (1st Dep't 1995) ("When facts and circumstances serve to put the third party on notice that the agent may not be authorized to represent the principal, the third party has a duty to inquire as to the scope of the purported authority."). Having failed to do so, Plaintiffs have failed to allege that Lab acted with the apparent authority of Project.

For all these reasons, Plaintiffs have failed to state a claim against Project, and all claims against Project are dismissed with prejudice.[7]

---

[7] Because the Court grants Project's motion to dismiss for failure to state a claim, the Court need not decide Project's motion to dismiss for lack of personal jurisdiction.

## II. Plaintiffs' Claims Against Lab Are Dismissed for Lack of Personal Jurisdiction

### A. The Applicable Law

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). The plaintiff, however, "need make only a prima facie showing" that jurisdiction exists. *Id.*

"[A] district court sitting in a diversity action . . . may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002) (citing Fed. R. Civ. P. 4(k)(1)(A)). Plaintiffs rely on § 302(a)(1) of New York's long-arm statute to establish personal jurisdiction. *See* Pls.' Mem. of Law at 5. That provision states that a court may exercise personal jurisdiction over a defendant who "in person or through an agent . . . transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). To determine whether a defendant transacts business in New York, courts consider the so-called *Agency Rent A Car* factors:

> (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).

---

Additionally, to the extent that Plaintiffs would move for leave to amend their complaint, that motion would be denied. Plaintiffs have already amended their complaint once, and they have not moved in their response papers for leave to amend a second time. Nothing in Plaintiff's response suggests that there are additional facts that they could allege that would adequately state a claim against Project. Accordingly, leave is not granted to move to file a second amended complaint, as such a motion would be futile.

9

B.   **Application to This Case**

As an initial matter, the Court notes that Lab has not moved to dismiss and has not appeared in this action. Plaintiffs have taken minimal steps to obtain a default judgment against Lab.[8] "[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 139 (2d Cir. 2011) (quoting *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)); *see also Hood v. Ascent Med. Corp.*, 691 F. App'x 8, 9–10 (2d Cir. 2017) ("[T]he district court was entitled to raise the matter *sua sponte* here because the defaulting defendant did not 'appear[]'or 'consent[] . . . to the jurisdiction of the court.'" (alterations in original)). Because Plaintiffs have failed to offer even a colorable basis for personal jurisdiction over Lab, and because Plaintiffs have already amended their Complaint once in an attempt to address its jurisdictional deficiencies, the Court finds that *sua sponte* dismissal is appropriate.[9]

Turning to the first *Agency Rent a Car* factor, New York's long-arm statute requires that an out-of-state defendant have "an *ongoing* contractual relationship" with an in-state corporation.

---

[8]   On May 29, 2018, Plaintiffs requested a certificate of default from the Clerk of Court. *See* Dkts. 34, 35. To date, Plaintiffs have not received a certificate of default from the Clerk, nor have Plaintiffs taken any steps to follow up or to otherwise move for a default judgment under this Court's Individual Practices. Plaintiffs' claims against Lab, therefore, could also be dismissed for failure to prosecute, pursuant to Rule 41(b). *See* Order (Mar. 16, 2018), Dkt. 20 (warning Plaintiffs that failure to move for a default judgment will result in dismissal for failure to prosecute); Order (Apr. 3, 2018), Dkt. 25 (directing Plaintiffs to follow the Court's Individual Practices in Civil Cases in moving for a default judgment). The Court need not address that basis for dismissal because the Court finds that dismissal for lack of personal jurisdiction is appropriate.

[9]   Ordinarily, this Court would, before deciding a matter *sua sponte*, enter an order to show cause and afford a party an opportunity to be heard. Here, however, Plaintiffs' response to Project's motion to dismiss argues that the Court has jurisdiction over Project because it is a principal of Lab, which (according to Plaintiffs) transacted substantial business in New York. *See* Pls.' Mem. of Law at 4–5. Put differently, Plaintiffs' response to Project's jurisdictional arguments depends in large part on whether the Court has personal jurisdiction over Lab. *See id.*; Fitzgerald Decl. ¶ 4 ("[T]he gist of plaintiffs' response to [Project's] motion is . . . [that] plaintiffs (through me) had extensive contacts and communications into New York via co-defendants Eden Lab and Eden Lab Ltd. . . . ."). Because Plaintiffs have already briefed the basis for the Court's jurisdiction over Lab, the Court finds that *sua sponte* dismissal is a sound exercise of discretion and appropriate.

*Sunward Elecs.*, 362 F.3d at 22 (emphasis added). Plaintiffs, however, do not allege that Lab conducted any business in New York other than the single Agreement that Lab entered into with Plaintiffs. "[D]istrict courts within this Circuit have held that a single short-term contract is not enough to constitute an 'ongoing contractual relationship' for the purposes of personal jurisdiction." *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 584–85 (S.D.N.Y. 2016) (collecting cases); *see also, e.g.*, *Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 317 (S.D.N.Y. 2007); *cf. Sea Tows Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 359 (E.D.N.Y. 2007) (finding an "ongoing contractual relationship" where parties did business for more than 14 years).

The second *Agency Rent a Car* factor asks whether the contract at issue was negotiated or executed within New York, or whether the defendant visited New York for the purpose of furthering the parties' contractual obligations. *Sunward Elecs.*, 362 F.3d at 22. There is no indication that the Lab employees—who were located in the United Kingdom—visited New York or otherwise conducted any activity within the state. While Plaintiffs allege that at least one of Plaintiffs' employees was present in New York when the Agreement was negotiated, *see* Fitzgerald Decl. Ex. 6, and that this employee wired money to Lab from a New York bank, *see* Am. Compl. ¶ 39, "[t]he unilateral activity of [a] plaintiff executing a contract in New York is an insufficient basis upon which to acquire jurisdiction over a non-domiciliary defendant." *Falow v. Cucci*, No. 00-CV-4754, 2003 WL 22999458, at *5 (S.D.N.Y. Dec. 19, 2003) (citing *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1065 (2d Cir. 1974)). Indeed, were such activity sufficient, a plaintiff could manufacture personal jurisdiction over a defendant through the plaintiff's own actions.

Plaintiffs also argue that the emails that Lab employees sent into the state are sufficient to establish personal jurisdiction. But telecommunications establish personal jurisdiction only if they were "related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.'" *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (collecting cases). In this case, the Agreement related to a festival in Bhutan, and Lab and its employees were located in the United Kingdom; the parties' transaction clearly did not have its center of gravity in New York. Indeed, nothing about the transaction at issue relates to New York, other than that one of Plaintiffs' employees appears to reside within the state.[10]

As to the third and fourth *Agency Rent a Car* factors, the Agreement contained no choice-of-law clause, and there is no indication that Lab was required to send notices or payments into New York or that Lab was otherwise subject to "supervision" within the state. *See* Fitzgerald Decl. Ex. 3. The fact that Plaintiffs wired funds to and exchanged emails with Lab from New York is insufficient to satisfy this factor. *See Sunward Elecs.*, 362 F.3d at 23; *see also, e.g.*, *Sandoval*, 507 F. Supp. 2d at 317 ("Defendant signed a contract in the Bahamas for work that was to be performed on its property in the Bahamas; the fact that [Plaintiff] decided to carry out some of the logistics and internal management of the contract project by using employees based in New York does not speak to the issue of *Defendant's* contacts with the forum." (emphasis in original)).

---

[10] By contrast, in *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17 (1970), the defendant participated by telephone from California in an auction of artwork located in New York. In that case, the court could exercise personal jurisdiction over the defendant because he "in a very real sense, projected himself into the auction room in order to compete with the other prospective purchasers who were there." *Id.* at 18. Similarly, in a case cited by Plaintiffs, *see* Pls.' Mem. of Law at 5 (citing *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)), an out-of-state defendant used telecommunications to purchase from a New York broker $15 million in bonds over a 13-month period. 7 N.Y.3d at 71–72. Under those circumstances, the New York Court of Appeals held that the exercise of personal jurisdiction over the defendants was proper.

For all these reasons, the Court does not have personal jurisdiction over Lab, and all claims against Lab are dismissed without prejudice.[11]

## CONCLUSION

For all the foregoing reasons, Project's motion to dismiss (Dkt. 26) is GRANTED. All claims against Eden Project and Eden Project Limited are DISMISSED WITH PREJUDICE for failure to state a claim. All claims against Eden Lab and Eden Lab Ltd. are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

The Clerk is respectfully directed to terminate the open motion at Dkt. 26 and to CLOSE the case.

**SO ORDERED.**

**Date: December 3, 2018**        **VALERIE CAPRONI**
**New York, New York**           **United States District Judge**

---

[11] To the extent that Plaintiffs move for jurisdictional discovery, *see* Pls.' Mem. of Law at 2, that motion is denied. "[A] court is not obligated to subject a foreign corporation to discovery where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004); *see also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009). Here, the Court lacks personal jurisdiction over Lab because the transaction at issue had virtually nothing to do with New York. No amount of discovery can remedy this problem, making jurisdictional discovery inappropriate.

Additionally, the Court is mindful that is has discussed only one provision of New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), as a possible basis for jurisdiction. No other provision in the statute would be appropriate here. Under N.Y. C.P.L.R. § 302(a)(2), Lab has not committed a "tortious act within the state." *See Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980) ("[T]he residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." (collecting cases)). N.Y. C.P.L.R. § 302(a)(3) does not apply because, as the Court has discussed, there is no indication that Lab has done any business within New York other than the Agreement at issue. *See* N.Y. C.P.L.R. § 302(a)(3) (requiring that the defendant "*regularly* does or solicits business, or engages in any other *persistent* course of conduct, or derives *substantial revenue* from goods used or consumed or services rendered, in the state" (emphasis added)). And, finally, N.Y. C.P.L.R. § 302(a)(4) is plainly not appropriate, as Plaintiffs have not alleged that Lab "owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a)(4).